**In the Matter of Phyllis J. HAYES, aka Phyllis Jean Hayes, Debtor.**

**George W. LEDFORD, Trustee in Bankruptcy, Plaintiff,**

v.

**ASSOCIATES FINANCIAL SERVICES, Rike's, Defendants.**

Bankruptcy No. 3–79–02015.
Adversary No. 3–80–0083.

United States Bankruptcy Court, S. D. Ohio, W. D.

Aug. 20, 1980.

George L. Houck, Dayton, Ohio, for Rike's.

Richard H. Hammond, Dayton, Ohio, for Associates Financial Services.

Wendell Sellers, Dayton, Ohio, for debtor.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

This matter is before the Court for disposition of the plaintiff-trustee's complaint to avoid a preference. A pretrial conference held on April 7, 1980 disclosed there are no factual issues in dispute; so the parties agreed to submit the case to the Court on memoranda of law.

The undisputed facts show that, in 1977, the Dayton Municipal Court stayed the garnishment of Phyllis Hayes' wages by allowing her to participate in the Dayton Municipal Court statutory trusteeship program (See Case No. T. 3438–D (Dayton Municipal Court 1977; Ohio Revised Code Section

2329.70.) The debtor paid into the trusteeship, and distributions were made to her creditors from time to time. The last distribution to creditors was made on September 17, 1979. This distribution consisted of Ms. Hayes' wages paid into the trusteeship from January, 1979 through September 14, 1979. (Joint Ex. A.) Rike's, a defendant herein, received $168.00 as its pro rata share of the September 17, 1979 distribution. Ms. Hayes filed for relief in bankruptcy with this Court on November 26, 1979.

The plaintiff-trustee alleges the $168.00 paid to Rike's falls within the type of payment prohibited by Section 547(b) of Title 11 of the United States Code. In opposition, Rike's claims the trustee cannot avoid the subject transfer because his avoiding powers are limited by 11 U.S.C. § 544(b). Further, Rike's alleges that all of the payments the debtor made into the municipal trusteeship prior to the 90-day period preceding the filing of her petition resulted in irrevocable transfers of the debtor's entire interest to the state court trustee. Thus, once she paid her wages into this trusteeship, the debtor relinquished all ownership rights.[1]

I

The Court is constrained to deny Rike's first defense, that the plaintiff-trustee's § 547(b) avoiding powers are limited by § 544(b) of the Bankruptcy Code. We find nothing in the Code to indicate that the trustee's avoiding powers as set forth in 11 U.S.C. §§ 544 through 549 are interdependent, either historically or by statutory interpretation. On the contrary, this Court interprets each of those sections to be self-contained, creating separate and distinct powers of avoidance to which the trustee may avail himself where appropriate. Each section treats a different type of circumstance: § 544(b) gives the trustee the rights of an unsecured creditor; § 545 gives the

trustee the power to avoid certain statutory liens; § 547 gives the trustee the power to avoid preferential transfers; § 548 allows the trustee to avoid fraudulent transfers of the debtor's property; and § 549 gives the trustee the power to avoid certain post petition transfers. There may be factual circumstances where the trustee can implement two or more of these powers; however, this is not a prerequisite to their effectiveness. The trustee may employ any one of these powers alone and without reference to the other. The defendant's own memorandum states "[s]ection 544(b) presents a separate and distinct method of avoidance that is predicated upon the appropriate law, usually state, governing the transaction." Defendant's Memorandum at p. 5 citing 4 COLLIERS ON BANKRUPTCY ¶ 544.03, p. 544–14 (footnotes omitted from original). We would also point out that § 546 delineates certain limitations on the trustee's avoiding powers under §§ 544, 545, 547, 548 and 549. Nowhere does this limitation section provide that these avoiding powers are interdependent or limited one by the other.

Accordingly, we hold that the trustee in bankruptcy has the authority to bring the within cause of action under 11 U.S.C. § 547(b) without regard to the provisions of 11 U.S.C. § 544(b).

II

August 28, 1979 marks the first day of the 90-day period prior to the date the debtor filed her petition in bankruptcy. According to 11 U.S.C. § 547, the trustee in bankruptcy may avoid any transfer of the debtor's property made on or after August 28, 1979 if all the elements of § 547(b) are present with regard to the transfer. In the factual situation at bar, we are concerned with two transfers of property on or after August 28, 1979. The first transfer was the debtor's payment of $134.00 into the trus-

---

1. In its Answer, Rike's also alleges that the subject transfer is not avoidable because it falls within the § 547(c)(2) exception to § 547(b) as a payment in the ordinary course of the debtor's financial affairs with Rike's. The Court notes that neither the pretrial order nor the defend-

ant's memorandum refers to this defense or provides factual evidence needed to make a finding. Considering the facts which are before the Court, it appears that the defendant does not in any event meet the 45-day requirement under § 547(c)(2).

teeship on September 14, 1979. The second transfer was the distribution by the municipal court trustee of $849.00 on September 17, 1979 to the debtor's creditors who participated in the trusteeship. The latter transfer consisted of all the debtor's wage-payments into the trusteeship from January 22, 1979 through September 14, 1979. The question to be resolved is whether the trustee's transfer on September 17, 1979, made within the 90-day period prior to the debtor's petition, constitutes a transfer of the debtor's property which may be avoided by the bankruptcy trustee.

The Court finds that the debtor's payment of $134.00 into the trusteeship on September 14, 1979 constituted a transfer of property of the debtor within the 90-day period prior to her petition in bankruptcy. However, the Court is not convinced that the payment enabled participating creditors to receive more than they would receive from the Chapter 7 estate had that payment not been made to them. *See* 11 U.S.C. § 547(b)(5). Therefore, although we find the $134.00 transfer satisfies the elements of § 547(b)(1) through (4), we hold that such transfer is not an avoidable preference.

Pursuant to the above holding, the following discussion will apply to only the remaining $715.00 of the $849.00 transfer made on September 17, 1979.

The plaintiff-trustee argues that the funds held by the Municipal Trustee were *in custodia legis*; thus, the moneys remained property of the debtor and could not accrue to the benefit of any creditor until distributions were actually made to them. Rike's, on the other hand, claims that once the debtor paid her money into the Municipal Trusteeship it was irrevocably transferred to the creditors; consequently, it was no longer debtor's property. We agree with the plaintiff that the funds held by the Municipal Court Trustee were *in custodia legis. See In re Martin Smith,* Case No. 21135 (S.D. Ohio, Bankruptcy Division 1965). However, we do not agree that these funds remained "property of the debtor" *Cf. In re Brown,* 85 Ohio Law Abs.

463 (N.D. Ohio, Bankruptcy Div. 1960) (stating "[f]unds in the hands of a Municipal Court trustee represent only an attempt to transfer assets of a debtor and they remain *in custodia legis*" at p. 467). The legal effect is that this trustee had a right to exclusive possession until distribution to creditors. No "title" passes or vests in the state court trustee or the creditors.

In the case at bar, we are convinced that the debtor has no rights of possession or control over the wages she paid into the Municipal Trusteeship. Ohio Revised Code Section 2329.70, which governs municipal trusteeships, supports our holding, stating in pertinent part that:

"Any person upon whom a demand has been made in accordance with section 1911.40 of the Revised Code may apply to any . . . judge of a municipal court . . . for the appointment of a trustee to receive that portion of the personal earnings of the debtor not exempt from execution, attachment, or proceedings in aid of execution, and such additional sums as the debtor voluntarily pays or assigns to said trustee . . . Upon such application and filing, such judge shall appoint a trustee to distribute such funds to said creditors of the debtor . .

. . . . .

No proceedings in attachment, in aid of execution, or other action to subject the personal earnings of the debtor to the payment of claims shall be brought or maintained by any creditor so long as at least the amount of the personal earnings of such debtor not exempt from execution, attachment, or proceedings in aid of execution are paid to the trustee at regular intervals as fixed by the . . . municipal court judge . . .

The maintaining of a proceedings in attachment, in aid of execution, or otherwise in violation of this section shall be void and may be prevented by writ of prohibition in addition to all other remedies provided by law. Such judge shall provide by rule or otherwise for notice to

creditors, the authentication and proof of claims, and time and manner of payment of the debtor, the distribution of funds, the bond of the trustee if required, and for all other matters necessary or proper to carry into effect the jurisdiction conferred by this section.

. . . . .

The trusteeship shall terminate upon the failure of the debtor to make the payments required by this section and in accordance with the rules established by the . . . municipal judge . . . ."

Supported by the authority granted under § 2329.70, the Municipal Court of Dayton promulgated Dayton Municipal Court Civil Rule 5.04 which governs trusteeship proceedings. That Rule states in pertinent part that,

"The filing of the application shall stay all proceedings against personal earnings of the applicant . . . In the event that the application is filed prior to the time [an] Order of Attachment or Order in Aid of Execution is served upon the employer or garnishee, the personal earnings subject to the order of the court shall be ordered paid to the trustee."

. . . . .

"*The trustee shall make distribution herein only to a creditor or his agent.*

The clerk . . . shall supervise payments of debtors and distribute the funds in each case at least every six months, unless the amount available does not equal ten percent of the claims listed . . . *In the event that payments are not made according to law for ninety days, the trusteeship shall be dismissed and the proceeds distributed equally to trusteeship creditors only.*"

[emphasis added.]

Reading the above statute and rule, clearly neither the debtor nor the creditors who participate in a municipal court trusteeship have any vested rights in the subject property once it is deposited with the court. The debtor has no rights because any moneys paid to the trustee can only be transferred to a creditor or its agent during the trusteeship as well as upon its termination. The creditors have no rights because they are precluded from instituting any actions to gain possession of such property. They must await the trustee's distributions. Based upon this reasoning, we find that when Phyllis Hayes paid over her non-exempt wages to the Dayton Municipal Court Trustee from January, 1979 through August 28, 1979, she made an irrevocable transfer of such property and relinquished all her rights of possession thereto. Consequently, the fund created by these payments and maintained by the municipal court trustee was not property of the debtor in the context of 11 U.S.C. § 547(b) and the Trustee's distribution of said fund was not a transfer of "property of the debtor" as required in 11 U.S.C. § 547(b). Rather, these were custodial funds as contemplated by 11 U.S.C. § 543 for which the paramount jurisdiction of the bankruptcy court directs a surcharge if there has been "any improper or excessive disbursements". See 11 U.S.C. § 543(c).

■ The Court has considered the holding of *In re Brown,* 85 Ohio L.Abs. 463 (N.D.Ohio Bankruptcy Div. 1960). (The facts of that case are distinguishable from the case at bar; thus, its holding, while relevant, is not entirely on point.) The *Brown* court treated the concept of *in custodia legis* and came to a different conclusion from ours. The court held that a deposit of a debtor's property with a municipal court trusteeship is only an attempt to transfer such property; does not vest title in the creditors; and, instead, title remains with the debtor, and the trustee in bankruptcy takes title to such property directly from a debtor. *Supra,* at 467. We disagree with this interpretation. Using the concept of "title" to property *in custodia legis* is inaccurate and confusing. This is especially true when speaking of a trustee succeeding to "title" under the Bankruptcy Code. One of the major concepts of the Code is the purported purpose of abolishing the concept of title passing from a debtor to a bankruptcy trustee. Accordingly, the *Brown* court's holding that title to property held *in*

*custodia legis* passes directly from the debtor to the trustee in Bankruptcy is no longer meaningful under the Bankruptcy Code. Furthermore, under Dayton Municipal Court Civil Rule 5.04, the discussion of vesting title is particularly inapplicable as a practical matter, because it is clear that a debtor is deprived of any control over his property once he deposits it with the court. If the state court still has possession at the time of a bankruptcy petition, the possession passes to the paramount jurisdiction of the bankruptcy court. If the funds have been duly distributed to the debtor's creditors prior to the vesting of this paramount jurisdiction, the trustee in bankruptcy has no authority to seek reimbursement unless there has been a violation of this paramount jurisdiction under 11 U.S.C. § 543.

We would point out that the facts of this case lend additional support to our opinion that the bankruptcy trustee cannot reach the $715.00 presently in dispute. There is no evidence that any trusteeship creditor induced the Municipal Trustee to make the September 17, 1979 distribution. Thus, this distribution was not made in the atmosphere of any demonstrated purpose to bestow a preference on creditors or that the creditors did receive more than a relative distribution as under Chapter 7 of the Bankruptcy Code.

The conclusion reached, therefore, is that payment or distribution of custodial funds to creditors, as contemplated by 11 U.S.C. § 543 does not constitute a preference, avoidable under 11 U.S.C. § 547, whether or not the payments were in fact made before or after the 90 days before the date of filing of the petition in bankruptcy.

*ORDERED, ADJUDGED AND DECREED* that the wage payments made by the debtor, Phyllis Hayes, from January 22, 1979 through August 28, 1979 were irrevocable transfers from said debtor to the Dayton Municipal Court Trusteeship set up in Case No. T. 3438–D of that Court; that the above transfers divested the debtor of any rights in the wages paid; and that the fund created by the wage payments were not property of the debtor, but was *in custodia legis* and subject to the municipal court's control.

It is further *ORDERED, ADJUDGED AND DECREED* that the debtor's payment of $134.00 into the municipal court trusteeship on September 14, 1979 was a transfer of property of the debtor within the 90-day period prior to the date she filed her petition in bankruptcy; but that said transfer did not result in a preferential payment to trusteeship creditors.

Therefore, it is *ORDERED, ADJUDGED AND DECREED* that the plaintiff-trustee is not entitled to recover any of the $849.00 distribution to creditors made by the municipal court trustee on September 17, 1979 and that Rike's, the defendant herein, need not surrender $168.00 representing its pro rata share of said distribution.