**In re LHG RESOURCES, INC.. Debtor.**

**LHG RESOURCES, INC. Debtor-In-Possession, Plaintiff,**

**v.**

**FIRST NATIONAL BANK OF MIDLAND, Defendant.**

**Bankruptcy No. 7–82–00099–E.**
**Adv. No. 7–83–0038 E.**

United States Bankruptcy Court,
W.D. Texas,
Midland-Odessa Division.

Oct. 6, 1983.

Thomas Hoekstra, San Antonio, Tex., for debtor/plaintiff.

Steven Stewart, Midland, Tex., for defendant.

## MEMORANDUM OPINION

JOSEPH C. ELLIOTT, Bankruptcy Judge.

The Complaint For Turnover of Property filed by the Plaintiff, LHG RESOURCES, INC. ("LHG" or the "DEBTOR"), Debtor-in-Possession in the above styled and numbered adversary proceeding, came before this Court for trial on March 30, 1983.

LHG had maintained a checking account with the Defendant, FIRST NATIONAL BANK OF MIDLAND, TEXAS (the "Bank"), prior to and subsequent to the filing by LHG of a voluntary Chapter 11 petition on Friday, October 22, 1982, at 3:17 p.m. On that same day, at some time after 2:00 p.m., the Bank placed an administrative "freeze" on LHG's account and initiated additional procedures intended to effect a setoff of the balance in the Debtor's checking account against a note held by the Bank and executed by Debtor. The Bank's first overt act evidencing an intent to assert

a setoff was the execution of a debit memo by an officer of the bank, which was delivered to a lobby teller sometime after 2:00 p.m., Friday, October 22, 1982. The Bank officially closed for business daily at 2:00 p.m., and therefore the first proof stamp on the back of the debit memo showed a date of October 25, 1982, the following Monday, which was the next business day. Pursuant to the debit memo, the posting, that is, the actual removal of the funds from the Debtor's account occurred on October 29, 1982. The actual amount debited from the account was $15,951.03, which amount was applied against a note held by the Bank and executed by the Debtor more than ninety (90) days prior to the date on which Debtor filed its petition in Bankruptcy.

It is important to note that, despite the imposition of an administrative "freeze" by the Bank, the evidence established that at least three (3) separate unrelated checks, properly drawn by LHG, were honored by the Bank and were paid out of LHG's account between October 22 and October 29, 1982.

The Debtor filed this adversary proceeding to recover the funds removed by the October 29th debit, alleging that the action taken by the Bank was a *post*-petition setoff of a *pre*-petition debt and was therefore a violation of the automatic stay provisions of 11 U.S.C. Section 362(a) which states in part:

"Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

.    .    .    .    .

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

.    .    .    .    .

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim of the debtor;

.    .    .    .    ."

The Bank answered and contended that the setoff was taken pursuant to its rights under the security agreement executed by LHG contemporaneously with the above referenced note. The Bank further contended that the setoff occurred and was completed prior to the time at which LHG filed its bankruptcy petition on October 22nd.

The two essential issues raised by this case, while not exceedingly complex, are not simply disposed of by statute. Nor have they been the subject of substantial written scrutiny. The first issue presented is a determination of whether the placing of an administrative "freeze" or "hold" on a debtor's account constitutes a violation of 11 U.S.C. Section 362. The second issue requires the Court to determine whether the "freeze" and subsequent setoff taken by the bank occurred post-petition or pre-petition.

In a recent case focusing on the "freeze" issue, Judge Edward H. Patton, Jr., held that ". . . an administrative freezing of a bank deposit of a Chapter 11 debtor violates the automatic stay of 11 U.S.C. Section 362." *In re Executive Associates, Inc. Debtor,* 24 B.R. 171, 172 (Bkrtcy.S.D. Tex.1982). Judge Patton further held that ". . . even if the placing of an administrative 'freeze' on the debtor's account is not an actual, technical setoff, it is tantamount to a setoff, and results in an unauthorized interference with the property of the Chapter 11 debtor without leave of the Court." *Id.* at 172. The Court concurs with Judge Patton's holding on this point.

As to the setoff issue, the case of *Baker v. National City Bank of Cleveland,* 511 F.2d 1016, 1018 (6th Cir.1975) describes the requirements of a setoff: (1) a decision is made to exercise a setoff, (2) some overt action is taken which accomplishes the setoff, and (3) some record is made which evidences that the setoff has been exercised. In the case at bar, the Bank contends that its setoff occurred and was completed when its officer, prior to the time LHG filed its petition, prepared a debit

**204**

memo for the purpose of emptying LHG's account and applying the funds to the Bank's pre-petition debt. The Court finds the evidence insufficient to support this contention. The debit memo was an indication that the Bank had made the decision to exercise an alleged right of setoff, but the setoff was not "actually made" until reflected in bookkeeping entries or by some similarly binding overt act. *Baker v. National City Bank of Cleveland,* supra. LHG's monthly statement for its checking account demonstrated that the actual withdrawal of funds did not take place until October 29, 1982. Therefore, the funds were not withdrawn from LHG's account until seven days after the filing of the petition in bankruptcy and, further, no effective "freeze" was placed on the account until October 29, 1982 as evidenced by the three intervening checks drafted by LHG and paid from the account by the Bank. The withdrawal of the funds by the Bank was, therefore, a proscribed post-petition setoff against a pre-petition debt.

It is clear that any unilateral right of self-help that the Bank may have had regarding setoff of the Debtor's account must have been accomplished prior to the filing of the petition in bankruptcy. The pre-petition action taken here by the Bank only satisfies the first of the three steps required by the Sixth Circuit in *Baker* to accomplish a complete act of setoff, i.e. the decision to exercise the right. The remaining steps were not taken until after the filing of the petition and, as such, there could be no effective setoff.

Accordingly, the Bank is ORDERED to return to LHG the funds removed from LHG's account on October 29, 1982 in the amount of $15,951.03. This Court does not express an opinion as to the issue of whether said funds are encumbered by a valid lien.