**In re Herbert C. TER BUSH and Betty J. Ter Bush, Debtors.**

No. 01–08453–H7.

United States Bankruptcy Court, S.D. California.

Feb. 11, 2002.

 .

Raymond D. Kitlas, Esq., Carlsbad, CA, for Howland.

Charles E. Duff, Esq., Vista, CA, for Debtors.

## MEMORANDUM DECISION

### JOHN J. HARGROVE, Chief Judge.

Creditor David Howland ("Howland") moves for an order to confirm an arbitration award and entry of judgment granting him the equitable remedy of specific performance of a written agreement for the sale of real property owned by Herbert C. Ter Bush and Betty J. Ter Bush (collectively, "Debtors"). Howland concurrently moves for relief from stay so that he could obtain entry of the arbitration award granting him specific performance. This Court has jurisdiction to determine this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(1) and General Order No. 312–D of the United States District Court for the Southern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

### FACTS

Debtors own and reside at the real property commonly known as 1970 Foothill Drive, Vista, California (the "Property"). Debtors listed the Property for sale because they intended to move to Arizona.

On February 25, 2000, Debtors entered into a written agreement ("Agreement") with Howland to purchase the Property. An escrow was opened. Prior to the close of escrow, it was discovered that Mr. Ter Bush had prostate cancer. Because of his failing health, the cancer was inoperable and Mr. Ter Bush began receiving treatment for the cancerous condition. Because Mr. Ter Bush's treatment would be ongoing, the Debtors decided not to go forward with the sale of the Property. Debtors notified their real estate agent that they wanted to cancel the escrow because of the medical condition.

Howland demanded that Debtors go forward with the sale and filed a suit in the San Diego Superior Court against Debtors seeking damages and specific performance. The matter proceeded to binding arbitration and the arbitrator determined that Howland was entitled to purchase the Property and granted his request for specific performance. The arbitrator denied Howland's request for an award of damages for intentional misrepresentation, negligent misrepresentation and damages for loss of the benefit of his bargain in an appreciating real estate market. The arbitrator awarded Howland costs of continuing escrow as damages in an amount not to exceed $500 and damages in the amount equal to his reasonable attorney's fees and related costs subject to determination by a post arbitration motion filed in the trial court. The arbitrator signed the written arbitration decision on August 2, 2001. Before Howland could get the arbitration award confirmed, Debtors filed their Chapter 7 petition on August 14, 2001.

### DISCUSSION

Howland argues that but for the bankruptcy, a judgment would have been entered in his favor. Howland contends the judgment would have been for specific performance, an equitable remedy, and not a money judgment. Howland contends he is entitled to relief from stay to have the judgment entered so that he can proceed with its execution.

Debtors argue that the Agreement for the sale and purchase of the Property is an executory contract and was therefore rejected because the sixty-day time limitation for assumption or rejection under § 365(d)(1) has passed. Debtors contend

that because the contract is rejected, Howland has a claim in this case and cannot enforce the arbitration award.

## A. The Agreement is Not an Executory Contract.

■ A contract for the purchase and sale of real property is no longer executory once that contract has been reduced to judgment in a specific performance action. *In re Glaze*, 169 B.R. 956 (Bankr.D.Ariz. 1994); *Roxse Homes, Inc. v. Roxse Homes Ltd. Partnership*, 83 B.R. 185 (D.Mass. 1988). Although Debtors' bankruptcy filing prevented Howland from getting a final judgment because of the automatic stay going into effect, that technicality does not cause the Agreement to remain executory.

■ Under California law, which controls the parties' property rights in this case, an unconfirmed arbitration award is viewed as the equivalent of a final judgment. *Thibodeau v. Crum*, 4 Cal.App.4th 749, 759, 6 Cal.Rptr.2d 27 (1992); *Trollope v. Jeffries*, 55 Cal.App.3d 816, 822–823, 128 Cal.Rptr. 115 (1976). One court noted that "[o]nce a valid award is made by the arbitrator, it is conclusive on matters of fact and law and all matters in the award are thereafter res judicata." *Thibodeau*, 4 Cal.App.4th at 759, 6 Cal.Rptr.2d 27 *citing Lehto v. Underground Constr. Co.*, 69 Cal. App.3d 933, 939, 138 Cal.Rptr. 419 (1977). For purposes of the executory contract analysis, the Court finds that an unconfirmed arbitration award is the equivalent of a final judgment. Therefore, the Court finds that the executory nature of the Agreement has ended and the remaining unperformed obligations are non-material or "ministerial." *See Glaze*, 169 B.R. at 961 citing *Roxse*, 83 B.R. at 185.

## B. The Award for Specific Performance is Not a Claim Within the Meaning of the Bankruptcy Code.

■ Under the Bankruptcy Code ("Code") § 101(5)(B) a claim means:

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

"[T]he right to an equitable remedy will only constitute a claim if the underlying breach gives rise to a right to the payment of money damages." *Roxse*, 83 B.R. at 188.

■ Howland alleged in his complaint against Debtors that he had "no adequate remedy at law because the Property is a single family dwelling which Plaintiff and his wife intend to occupy and because Plaintiff's contract remedy will not compensate Plaintiff for the increase in value of the Property since the date of the Ter Bushes' refusal to perform." Further, California Civil Code § 3387 entitled "Adequate Remedy by Pecuniary Award" states that "[i]t is to be presumed that the breach of an agreement to transfer real property cannot be adequately relieved by pecuniary compensation. In the case of a single-family dwelling which the party seeking performance intends to occupy, this presumption is *conclusive*." [1] (Emphasis added). Implicit in the arbitrator's award for specific performance is that he considered and followed California law in this regard and that money damages were inadequate. The Court concludes that the arbitrator's award for specific performance is not a

---

1. The parties stipulated in open court that Howland was purchasing the Property as his residence.

claim within the meaning of the Code because the underlying breach in this case does not give rise to a right to the payment of money damages.

### C. Offset.

■ Howland seeks to offset damages consisting of his reasonable attorney's fees and related costs and an amount not to exceed $500.00 for continuing escrow services against the purchase price of the Property. Code § 553 provides for setoff, preserving certain rights that exist under relevant non-bankruptcy law. *In re TLC Hospitals, Inc.*, 224 F.3d 1008, 1011 (9th Cir.2000). Whether to allow setoff pursuant to § 553 is left to the sound discretion of the bankruptcy court. *In re Luz Int'l, Ltd.*, 219 B.R. 837, 840 (9th Cir. BAP 1998). In determining whether the right to setoff should be preserved in bankruptcy under § 553, the party asserting setoff must demonstrate 1) the debtor owes the creditor a pre-petition debt; 2) the creditor owes the debtor a pre-petition debt; and 3) the debts are mutual. *Id.* at 843.

#### 1. The Right to Setoff Exists Under California Law.

■ California law recognizes the equitable right to setoff. *Birman v. Loeb*, 64 Cal.App.4th 502, 516–18, 75 Cal.Rptr.2d 294 (1998); *Kruger v. Wells Fargo Bank*, 11 Cal.3d 352, 113 Cal.Rptr. 449, 521 P.2d 441 (1974). However, that right may be limited in order to carry out state policies protecting the interest of the debtor. *Kruger*, 11 Cal.3d at 352, 113 Cal.Rptr. 449, 521 P.2d 441 (1974).

#### 2. All the Requirements for Section 553 are Met.

■ Debtors do not dispute that they owe Howland a pre-petition debt nor do they dispute that Howland owes them a pre-petition debt. Debtors argue however that the debts at issue do not arise from the same transaction and are not mutual. The court disagrees.

■ To establish mutuality, a three-prong test must be met: 1) the debts must be in the same right; 2) the debts must be between the same individuals; and 3) those individuals must stand in the same capacity. *Luz Int'l*, 219 B.R. at 845. "Courts have interpreted debts in the same right to mean that a 'pre-petition debt cannot offset a post-petition debt.'" *In re Westchester Structures, Inc.*, 181 B.R. 730, 739 (Bankr.S.D.N.Y.1995) *citing In re Bay State York Co., Inc.*, 140 B.R. 608, 614 (Bankr.D.Mass.1992). Moreover, the concept of the same right "subsumes the separate question of whether any of the obligations sought to be offset are owed jointly with some other entity." 5 *Collier on Bankruptcy* ¶ 553.03[3][d], at 553–39 (15th ed. revised 2001) [hereinafter *Collier*]. The Court concludes that both Howland's obligation to pay the purchase price for the Property and the Debtors' obligation to pay the reasonable attorney fees and other costs arising out of the arbitration award are in the "same right." Both parties' debts arose pre-petition and no third party is involved. Therefore, the first prong of the mutuality test is met.

The Court finds that the second prong of the mutuality test is also met; the parties are the same in each transaction. Finally, the parties stand in the same capacity in each transaction. An example where this prong may not be met is "[w]here one party owes a fiduciary duty to the other, or has a claim for trust funds, and the other side's claim is a simple unsecured debt...." *Westchester Structures*, 181 B.R. at 739 (citation omitted). Such is not the case here. The Court finds that all the requirements of § 553 have been met.

### 3. Debtors Homestead Exemption Rights.

▉▉▉ Debtors argue that Howland cannot setoff the attorney and other fees awarded to him in the arbitration against the purchase price because it will deprive Debtors of their fresh start.

Relying on § 522(c), several courts have denied setoff when it has not been taken before the commencement of the case and the debtor claims the property as exempt. *Collier* ¶ 553–03[3][e][iv], at 553–43 n. 147; *see also In re Pieri*, 86 B.R. 208, 212 (9th Cir. BAP 1988) (citations omitted). Section 522(c) provides in relevant part:

> Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case. . . .

In *Pieri*, the Bankruptcy Appellate Panel (BAP), reconciled the conflict between § 553—which allows setoff of mutual debts owed between a creditor and the debtor which arose before the commencement of the case, and § 522(c)—which bars exempt property from being liable for any debt, with certain enumerated exceptions, that arose before the commencement of the case. The BAP, in construing the two statutes, noted that "it is long settled that where there is an irreconcilable conflict between different parts of the same act, the last in order of arrangement will control." *Id.* at 212–13. The BAP concluded therefore that " § 553 would control over § 522(c) on any point of conflict." *Id.* (citations omitted). Nonetheless, the BAP recognized that exemption statutes are to be given a liberal construction, and that "this liberal view will be maintained in state policy governing the use of setoff against exempt property." *Id.* Thus, in the Ninth Circuit, while § 553 would control over § 522(c), this Court must still consider whether any state policy of protecting the rights of the debtor are present in this case.

Many California courts have protected exemptions from setoff in order to carry out state policies protecting the interest of the debtor. *See Birman*, 64 Cal.App.4th at 516–18, 75 Cal.Rptr.2d 294 (1998) (disallowing creditors the right to setoff a debt owed by debtor against a deficiency remaining after a non-judicial foreclosure under a purchase money trust deed because it would abrogate section 580b) (citations omitted); *Kruger*, 11 Cal.3d at 369 n. 24, 113 Cal.Rptr. 449, 521 P.2d 441. For example, California courts have disallowed a setoff against exempt property that provides income necessary to pay daily living expenses. *Kruger*, 11 Cal.3d at 352, 113 Cal.Rptr. 449, 521 P.2d 441 (disallowing setoff against debtor's bank account which contained unemployment compensation and disability benefits); *Barnhill v. Robert Saunders & Co.*, 125 Cal.App.3d 1, 177 Cal.Rptr. 803 (1981) (disallowing employer to setoff debts owed to it by employee's exempt wages due to him against debts owed it by employee). And California courts have disallowed setoff against alimony or child support payments. *Williams v. Williams*, 8 Cal.App.3d 636, 87 Cal.Rptr. 754 (1970). In each case, state policies protecting the interest of the debtor apparently outweighed the creditor's right to setoff.[2]

---

2. When an important public policy is not at stake, however, a setoff may be allowed against exempt property. For example, in *Pieri*, the BAP allowed the landlord the right to setoff her claims for damage to leased premises against the debtors' cause of action against landlord arising out of the same circumstances, even though debtors claimed the cause of action as exempt property in their bankruptcy case. The *Pieri* court noted that it

Undoubtedly, the public policy prompting homestead exemptions in California is strong.

> Homestead laws are founded upon considerations of public policy, their purpose being to promote the stability and welfare of the state by encouraging property ownership and independence on the part of the citizen, and by preserving a home where the family may be sheltered and live beyond the reach of economic misfortune. The statutes are intended to secure to the householder a home for himself and family, regardless of his financial condition—whether solvent or insolvent—without reference to the number of his creditors, and without any special regard to the extent of the estate or title by which the homestead property may be owned.

*Rich v. Ervin,* 86 Cal.App.2d 386, 390–391, 194 P.2d 809 (1948).

The homestead exemption is so important in California that it is usually protected in forced sales and in attachment proceedings. *See generally* California Civil Code of Procedure (CCP) §§ 704.720–90.[3] In a forced sale situation, the levying officer is instructed to pay first the liens and the encumbrances, and then the judgment debtor prior to paying his/her own costs and the judgment creditor. CCP § 704.850. None of the statutes addressing homestead exemptions and their protection mention setoff. In *Kruger,* the California Supreme Court found that "although setoff varied from attachment and execution because it did not require the aid of a state official, 'there is no relevant difference between the two procedures as to the state objective of protection of ... benefits from claims of creditors.' "[4] *Kruger,* 11 Cal.3d at 370–71, 113 Cal.Rptr. 449, 521 P.2d 441. The California Supreme Court also said that the right of setoff may be "restricted by judicial limitations imposed to uphold a state policy of protecting the rights of the debtor." *Id.* at 367, 113 Cal.Rptr. 449, 521 P.2d 441. California case law therefore supports the proposition that exempt property will be protected from setoff when an

---

was unlikely California law would recognize the right of setoff against the unliquidated contract claim, primarily because it could not be relied on to provide a source of income at any time in the foreseeable future. *Pieri,* 86 B.R. 208, 212 (9th Cir. BAP 1988).

**3.** Debtors rely on these CCP sections for their $100,000 homestead exemption.

**4.** The Ninth Circuit has noted the tendency of the California Supreme Court to give greater weight to the state policies involved, while paying little attention to the language of the relevant exemption statutes. *In re Lares,* 188 F.3d 1166 (9th Cir.1999). In *Lares,* the debtor challenged a bank's exercise of contractual right to setoff funds in the debtor's bank account against preexisting business debt personally guaranteed by the debtor, contending that the funds, as proceeds from the sale of her home, were exempt from setoff under Idaho law. The relevant statute under Idaho law provided that the homestead was exempt from attachment and from execution or forced sale. Lares relied on *Kruger v. Wells* *Fargo Bank,* 11 Cal.3d at 352, 113 Cal.Rptr. 449, 521 P.2d 441 for the proposition that the funds in the account were exempt. The Ninth Circuit rejected Lares' reliance on *Kruger* stating that 1) the court there was dealing with a general right of setoff versus a contractual right of setoff in the instant case; and 2) the California court displayed a ready willingness to rewrite the applicable statute to arrive at the desired result. The court went on to note that "Idaho courts have not shown themselves to be so willing to ignore what the legislature has said." The court found that the statute at issue was "clear on its face and there is no room for construction of its terms. 'Attachment,' 'execution' and 'forced sale' involve judicial proceedings. By no stretch of its plain language can the statute be deemed to include a voluntary, contractual right of setoff." *Id.* at 1169. The *Lares* court alludes to the fact that it is unlikely a California court would allow setoff in a similar factual situation.

important public policy regarding the rights of the debtor is involved, regardless of the statutory language granting the exemption.

■ When interpreting state law, federal courts are bound by decisions of the state's highest court. In the absence of such a decision, a federal court must predict how the highest state court would decide the issue. *In re Bartoni–Corsi Produce, Inc.,* 130 F.3d 857, 861 (9th Cir. 1997). There is no California case directly on point, however, California case law in this area gives the Court guidance.

The Court finds it likely that a California court would disallow the setoff in this case. The homestead exemption is highly valued in the State of California from a public policy point of view. Debtors are elderly and in a chapter 7 bankruptcy proceeding which includes approximately $74,000 in unsecured debt. Debtors must rely on their state exemptions to provide them a minimal standard of living in the future. On their schedules, Debtors have claimed exemptions in their residence ($100,000), a 1995 Ford Aspire ($2050), furniture ($3500) and clothing ($500). Apparently Debtors income consists of social security because Mr. Ter Bush is unable to work because of his poor health. It is unclear what the equity is in the Property because the Court does not know the purchase price agreed to by the parties. However, even assuming a best case scenario, Debtors would be entitled to no more than the $100,000 they have claimed exempt on their schedules. This amount may allow them to secure a new home which is the purpose behind the homestead exemption. Accordingly, the Court finds that Howland is not entitled to setoff the Debtors' debt against the purchase price of the Property.

## CONCLUSION

The Court grants Howland limited relief from stay to confirm his arbitration award and execute on the specific performance part of his judgment. Howland is not however given relief from stay to pursue the liquidation of his attorney fees and other costs arising out of the arbitration. Howland may renew this request, if necessary, at a later time.[5] Howland is also not entitled to setoff any fees or costs owed by the Debtors against the purchase price of the Property.

The Court denies Howland's motion for an order to confirm the arbitration award and entry of the judgment as these matters can now be addressed by the state court.

This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. The attorney for Howland is directed to file with this Court an order in conformance with this Memorandum Decision within ten (10) days from the date of entry thereof.

---

**5.** The Court notes that Howland has an adversary complaint pending objecting to the Debtors § 727 discharge.